Erik F. Stidham (ISB #5483)
Christopher C. McCurdy (ISB #8552)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
Facsimile:  208.343.8869
efstidham@hollandhart.com
ccmccurdy@hollandhart.com

Attorneys for Plaintiff United States of America *ex rel.* Stuart Hallam

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Stuart Hallam,<br><br>　　　　Plaintiff.<br><br>vs.<br><br>BRETT DEUTER, an individual; DEUTER CONSTRUCTION, LLC, an Idaho limited liability company; and ENLIGHTEN, LLC, an Idaho limited liability company dba Enlighten Construction Services and dba EnlightenHome,<br><br>　　　　Defendant. | Case No. _____<br><br>**RELATOR STUART HALLAM'S ORIGINAL COMPLAINT**<br><br>**FILED UNDER SEAL**<br><br>PURSUANT TO 31 U.S.C. § 3730(b)(2) |

Plaintiff/Relator Stuart Hallam ("Hallam" or "Relator"), by and through his attorneys of record, Holland & Hart LLP, brings this action pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3732 ("FCA"), and seeks to recover all damages, penalties, and other remedies established by the FCA on behalf of the United States of America.  In support, Relator would respectfully show the following:

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 1

I.     INTRODUCTION TO CASE

1.     This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by the Defendants and/or their agents and employees, in violation of the FCA.

2.     This action seeks to recover the federal dollars wrongfully loaned to Defendants through the Federal Government's Payroll Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") Program.  The PPP was enacted as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in March 2020 to provide emergency financial assistance to Americans suffering the economic impact of the novel coronavirus.  EIDL funds are intended to provide financial assistance to small businesses or private, non-profit organizations that suffer substantial economic injury as a result of a declared disaster.  During the COVID-19 pandemic, some EIDL funds were forgivable under certain circumstances.

3.     The Defendants collectively received over $700,000 in forgivable PPP and EIDL loans in 2020 and 2021.

4.     Relator Hallam discovered that the Defendants knowingly made numerous misrepresentations on their loan applications for these funds, used the provided funds for improper purposes, and subsequently made further misrepresentations when applying to have those loans forgiven.

5.     Through these misrepresentations, the Defendants have wrongfully received and retained hundreds of thousands of taxpayer dollars at the expense of the United States.

6.     This action seeks to recover those wrongfully received and retained funds.

II.     JURISDICTION AND VENUE

7.     Jurisdiction and venue are proper in the District of Idaho pursuant to the False Claims Act (31 U.S.C. § 3732(a)), because Relator's claims seek remedies on behalf of the

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 2

United States for violations of 31 U.S.C. § 3729, which occurred in the District of Idaho.  The Defendants engage in business in the District of Idaho and are subject to general and specific personal jurisdiction pursuant to 31 U.S.C. § 3732(a) in that the claims for relief in this action are brought on behalf of the United States for multiple violations of 31 U.S.C. § 3729.

### III.   ORIGINAL SOURCE AND DISCLOSURES

8.   There are no bars to recovery under 31 U.S.C. § 3730(e), or in the alternative, Relator is an original source as defined therein.

9.   Relator has direct knowledge of the information on which his allegations are based and is disclosing that information to the United States Government prior to the public disclosure of that information as defined in 31 U.S.C. § 3730(e)(4)(a).  To Relator's understanding, the information contained in this Complaint has not been disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media.

10.   Relator will serve a copy of this Complaint and a written disclosure of substantially all material evidence and information he possesses to the Government as required under 31 U.S.C. § 3730(b).

### IV.   PARTIES

11.   Relator Hallam is an individual and files this action on behalf of the United States pursuant to the FCA.

12.   Defendant Brett Deuter is an individual residing in Blaine County, Idaho.

13.   Defendant Deuter Construction was an Idaho limited liability company with its principal place of business in Ketchum, Idaho.  Brett Deuter was the owner and sole member of Deuter Construction at all times relevant to this Complaint.

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 3

14. Defendant Enlighten, LLC is an Idaho limited liability company doing business as Enlighten Construction Services and as EnlightenHome. Its principal place of business is in Ketchum, Idaho. Brett Deuter was the owner and sole member of Enlighten at all times relevant to this Complaint.

## V. GENERAL ALLEGATIONS

**A.** **The FCA**

15. The FCA was originally enacted during the Civil War and substantially amended in 1986, 2009, and 2010, to enhance the ability of the United States Government to recover losses sustained as a result of fraud against it. The FCA was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments would create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

16. The FCA prohibits, among other things: (a) knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government; and (d) conspiring to violate any of these sections of the FCA. 31 U.S.C. § 3729(a)(1)(A)-(C), and (G).

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 4

17. Any person who violates the FCA is liable for a civil penalty of thousands of dollars for each violation, plus three times the amount of the damages sustained by the United States. 31 U.S.C. § 3729(a)(1).

18. The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery. The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

B.  **The CARES Act and PPP Program**

19. The CARES Act was passed by Congress in March 2020 as part of its response to the novel coronavirus. Through the CARES Act, Congress initially authorized $349 billion in forgivable loans under the PPP in March 2020 and authorized $300 billion in additional funding in April 2020.

20. In order to obtain a PPP loan, a business had to meet certain qualifications and was required to submit a PPP loan application. A PPP application must be signed by an authorized representative of the business seeking the loan. The application also requires the business to acknowledge the program rules and make affirmative certifications to be eligible to obtain the PPP loan and receive funds.

21. To be eligible to receive PPP money, businesses were required to make certified representations about the nature of their businesses and the ways in which they would spend the loan monies.

22. As part of the PPP loan application process, the applicant had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. Those figures were used to calculate the amount of money the small business was eligible to receive

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 5

under the PPP, as well as to determine eligibility for the program. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

23. PPP loan funds had to be used by the recipient business on certain permissible expenses: payroll costs, mortgage interest, rent, and utilities.

24. Recipients of PPP loans can apply for those loans to be forgiven under certain circumstances. Borrowers may apply for and receive forgiveness of the principal and interest on their loans if they use the funds for certain qualifying business expenses. In order for a loan to be forgiven, subject to certain additional requirements, at least 60% of the proceeds of the loan must have been spent on payroll costs, while the remainder of the forgiven amount must have been spent on business mortgage interest payments, business rent or lease payments, or business utility payments.

25. In applying for forgiveness of a PPP loan, borrowers again make certifications and representations to the Government that are material and binding.

26. The Government provided a safe harbor period to businesses who received, but ultimately did not need a PPP loan, so that such businesses could repay those loans without penalty. However, businesses that did not repay their loans during the safe harbor period, but instead sought forgiveness of their loans, cannot seek protection in that safe harbor.

**C.     The EIDL Program**

27. The EIDL Program is administered by the Small Business Administration ("SBA") and can provide up to $2 million of financial assistance (actual loan amounts are based on amount of economic injury) to small businesses or private, non-profit organizations that suffer substantial economic injury as a result of the declared disaster, regardless of whether the applicant sustained physical damage.

28. To be eligible for EIDL assistance, small businesses or private non-profit organizations must have sustained economic injury and be located in a declared disaster area or contiguous county, parish or jurisdiction.

29. During the COVID-19 pandemic, the SBA was offering EIDL funds for businesses facing the economic impacts of the novel coronavirus. Certain EIDL funds were designed to be forgivable if specified conditions were met.

D. **The Defendants' Businesses, Their Loan Applications, Their Loan Forgiveness Applications, and False Statements**

30. Deuter Construction was a general contracting business that was formed through the Idaho Secretary of State on March 31, 2017.

31. Enlighten is in the business of home renovations and property management, and it was formed through the Idaho Secretary of State on March 31, 2017.

32. On information and belief, Deuter Construction and Enlighten used the same tools, equipment, and employees.

33. On information and belief, Deuter Construction and Enlighten both operated from 560 Washington Avenue in Ketchum, Idaho.

34. Enlighten leased the space at 560 Washington Avenue, and Deuter Construction used the same space through a sublease. There was no written sublease agreement between Enlighten and Deuter Construction, and the landlord of 560 Washington Avenue was not informed of the informal sublease.

35. By 2018 and 2019, Deuter Construction experienced financial difficulties and had trouble meeting payroll.

36. In December 2018, Relator Hallam loaned Deuter Construction $25,000 to cover operating expenses.

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 7

37. Relator Hallam was not Deuter Construction's only creditor in the 2018-2019 timeframe.

38. Between 2017 and 2020, Enlighten did not generate any revenue and was an inactive business.

39. In 2019, the Idaho Secretary of State administratively dissolved Enlighten for failure to submit an annual report.

40. On March 23, 2020, Deuter Construction, through Brett Deuter, applied for an EIDL from the Small Business Administration ("EIDL Application"). A true and correct copy of the EIDL Application is attached as **Exhibit A**.

41. The EIDL Application contains a certification as to truthful information that states "[b]y signing this application, you certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future."

42. In the EIDL Application, Deuter Construction Represented that it had twelve (12) employees and that Brett Deuter had never filed for bankruptcy.

43. Brett Deuter had filed for a Chapter 7 bankruptcy in 2007.

44. As part of the EIDL Application, Brett Deuter answered "No" to the question of whether "[i]n addition to ownership in DEUTER CONSTRUCTION, LLC, does this individual owner own more than 50% of, or is this individual owner a Managing Member or General Partner of a corporation, partnership, limited partnership, or LLC?"

45. On April 10, 2020, Brett Deuter reinstated Enlighten after it had been administratively dissolved by the Idaho Secretary of State.

46. On April 14, 2020, Deuter Construction received a $7,000 advance on its request for EIDL funds.

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 8

47. On the same date it received the $7,000 advance, Deuter Construction transferred $5,000 to Brett Deuter's personal account.

48. On April 23, 2020, Deuter Construction was awarded an EIDL of $496,600. When added to the $7,000 advance, Deuter Construction received a total of $503,600 in EIDL funds.

49. Almost immediately upon receiving the bulk of the EIDL funds on April 23, 2020, Deuter Construction transferred all available funds into Enlighten's account. Because the Deuter Construction account had an account balance of negative $245 before the bulk of the loan funds were deposited on April 23rd, only $496,355 was moved to Enlighten's account.

50. After the EIDL funds were transferred to Enlighten's account, the Deuter Construction bank account ended April 23, 2020 with a balance of negative $70.

51. Also on April 23, 2020, Brett Deuter completed an application for a PPP loan on behalf of Deuter Construction ("First PPP Application"). A true and correct copy of the First PPP Application is attached as **Exhibit B**.

52. The First PPP Application contained several different documents, including a promissory note executed by Brett Deuter, a borrower's closing certification, a borrower's authorization to deposit loan proceeds, a certification of beneficial owners, a loan calculation certification, and other statements and documentation relating to Deuter Construction.

53. The First PPP Application included several representations made on behalf of Deuter Construction.

54. The First PPP Application stated that Deuter Construction had seven (7) employees as of February 15, 2020, and that Deuter Construction expected to have the same number of employees by June 30, 2020.

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – FILED UNDER SEAL - 9

55. The First PPP Application stated that the average monthly payroll for Deuter Construction was $42,598, and that the annual wages and tips paid by Deuter Construction were $458,448.

56. The First PPP Application also stated that of the loan amount sought, $1,500 was to be spent on utilities, $70,000 on payroll, $7,500 on rent, and $9,000 on group healthcare.

57. The First PPP Application also contained several certifications that were agreed to and initialed by Brett Deuter.

58. On the First PPP Application, Brett Deuter certified that he owned 100% of Deuter Construction.

59. On the First PPP Application, Brett Deuter also certified that, as the applicant, he was not "an owner of any other business, or [did not] have common management with, any other business."

60. On the First PPP Application, Brett Deuter certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," and that he "underst[oo]d that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

61. On May 12, 2020, $106,400 in PPP funds requested in the First PPP Application were deposited in *Enlighten*'s bank account ("First PPP Loan") and the lender of record was Customers Bank. On May 13, 2020, the $106,400 was transferred from Enlighten's account to Deuter Construction.

62. On May 28, 2020, roughly a month after receiving Deuter Construction's EIDL funds, Enlighten purchased a five-acre residential property located at 206 Bannock Drive in Hailey, Idaho. The purchase price was $150,000, and Enlighten would not have had sufficient funds for closing on the purchase without Deuter Construction's EIDL funds.

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 10

63. Deuter Construction ceased all business operations in December 2020.

64. On or about December 22, 2020, all of Deuter Construction's employees became employees of Enlighten. After December 22, 2020, Deuter Construction had no employees.

65. On January 26, 2021, Brett Deuter completed a second application for a PPP loan on behalf of Deuter Construction by filling out a Paycheck Protection Program Second Draw Borrower Application Form ("Second PPP Application"). A true and correct copy of the Second PPP Application is attached as **Exhibit C**.

66. On the Second PPP Application, Brett Deuter signed and initialed several certifications.

67. On the Second PPP Application, Brett Deuter certified that Deuter Construction "was in operation in February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes . . . ."

68. On the Second PPP Application, Brett Deuter certified that:

> The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

69. Brett Deuter also certified that, before receiving a Second PPP Loan, he would have used the full amount of the First PPP Loan only for eligible expenses.

70. The Second PPP Application contained a borrower's certification that was signed by Brett Deuter.

71. On that borrower's certification, Brett Deuter certified that Deuter Construction "is and since February 15, 2020, has been duly formed, validly existing, operating, and in good

RELATOR STUART HALLAM'S ORIGINAL COMPLAINT – <u>FILED UNDER SEAL</u> - 11

standing in the state of its formation and in all other jurisdictions where it is qualified to do business . . . ."

72. Also on that borrower's certification, Brett Deuter agreed that Deuter Construction "will not, without Lender's consent, change its ownership structure, make any distribution of company assets that would adversely affect its financial condition, or transfer (including pledging) or dispose of any assets, except in the ordinary course of business."

73. Brett Deuter further certified that he understood knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, and that Deuter Construction, as the borrower, was in compliance with all laws, rules, regulations, guidance, and orders applicable to the PPP and PPP second draw loan program.

74. On January 27, 2021, the Second PPP Application was approved and $100,018.72 was deposited directly into Enlighten's account ("Second PPP Loan"). The Lender for the Second PPP Loan was Idaho First Bank. That same day, Brett Deuter wrote a check for $5,774.19, and the next day he transferred $5,000 to his personal checking account.

75. On May 13, 2021, Brett Deuter applied for forgiveness of the First PPP Loan.

76. When applying for forgiveness of the First PPP Loan, Brett Deuter certified that Deuter Construction had nine employees as of May 13, 2021.

77. Deuter Construction did not have nine employees on May 13, 2021; it had zero employees on that date.

78. On May 26, 2021, the First PPP Loan was forgiven.

79. On June 15, 2021, Deuter Construction was administratively dissolved by the Idaho Secretary of State.

80. On October 13, 2021, Brett Deuter applied for forgiveness of the Second PPP Loan ("Second PPP Loan Forgiveness Application"). A copy of the Second PPP Loan Forgiveness Application is included in **Exhibit D**.

81. When applying for forgiveness of the Second PPP Loan, Brett Deuter certified that Deuter Construction had eight employees at the time of the loan application and eleven (11) employees on October 13, 2021.

82. Deuter Construction did not have eight employees at the time of the loan application nor 11 employees on October 13, 2021; it had zero employees on either date.

83. On the Second PPP Loan Forgiveness Application, Brett Deuter certified that $101,246.53 of the Second PPP loan was spent on "Payroll Costs" for Deuter Construction between the loan disbursement date of January 26, 2021 and October 13, 2021.

84. On the Second PPP Loan Forgiveness Application, Brett Deuter certified that "[t]he Borrower has complied with all requirements in the Paycheck Protection Program Rules" and that "[t]he information provided in th[e] application is true and correct in all material respects."

85. The Second PPP Loan amount of $100,018.72 was forgiven on October 18, 2021.

E. **State Court Litigation Between Relator and Defendants**

86. On February 7, 2022, Relator brought an action against the Defendants in the District Court of the Fifth Judicial District of the State of Idaho, Blaine County, in Case No. CV07-22-00074 ("State Court Case").

87. In the State Court Case, Relator Hallam alleged that Brett Deuter failed to repay a $25,000 loan provided by Hallam and therefore committed breach of contract or, in the alternative, had been unjustly enriched. The Complaint in that matter likewise alleged that the

corporate forms of Deuter Construction and Enlighten, LLC should be ignored under the piercing the corporate veil or alter ego theory.

88. Discovery was exchanged between the parties in the State Court Case, including documentation regarding additional loans that the Defendants had received in time frames relevant to Hallam's claims.

89. During the discovery process in the State Court Case, Brett Deuter was deposed in his individual capacity on October 13, 2022, and as the 30(b)(6) designee of Deuter Construction on January 19, 2023.

90. In his October 13, 2022 deposition, Brett Deuter acknowledged that Deuter Construction received two PPP loans.

91. Brett Deuter stated that, although Deuter Construction obtained the PPP and EIDL loans, Deuter Construction was not doing any of its own separate work. It was subcontracting through or for Enlighten.

92. Brett Deuter also testified that he received $7,000 in EIDL funds based on his preliminary approval for an EIDL loan, and on the same day, he transferred $5,000 into his personal checking account.

93. Brett Deuter stated that on the same day the EIDL funds were transferred from Deuter Construction to Enlighten, he transferred $20,000 to his personal checking account. He stated he could not recall why.

94. In his January 19, 2023, 30(b)(6) deposition, Brett Deuter stated that no project contracts were created for Deuter Construction in 2020.

95. Brett Deuter also testified that Deuter Construction was not operating in 2021, so it had no rent, payroll, or utility costs during that year.

96. And Brett Deuter further testified that the Second PPP Loan was used to pay Enlighten's costs, not costs related to Deuter Construction.

97. In response to a question about whether Deuter disclosed in the Second PPP Loan forgiveness application the use of the Second PPP Loan to pay Enlighten costs, Brett Deuter stated that he was not asked for that information.

98. A court trial was conducted in the State Court Case on March 31, 2023.

99. On May 16, 2023, the state court issued its Findings of Fact, Conclusions of Law and Decision ("State Court Decision") in the State Court Case.

100. In the State Court Decision, the court held that Hallam established the elements for his breach of contract action against the Defendants and for his alter ego theory showing a unity of interest among the Defendants.

## VI. CAUSES OF ACTION

### COUNT I

**Submission of a False Claim (31 U.S.C. § 3729(a)(1)(A))**

101. Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs in this complaint as if fully set forth herein.

102. This is a claim for treble damages and penalties under the FCA.

103. The Defendants knowingly presented a false and/or fraudulent claim to the United States in the form of its PPP Application and/or EIDL Application and applications for forgiveness of the same.

104. The Defendants' EIDL Application contained information that Defendants knew to be false.

105. The Defendants' First PPP Application contained information that the Defendants knew to be false, including a misrepresentation of the number of employees that were currently employed by the Defendants at the time of the loan application.

106. The Defendants' application to forgive the First PPP Loan contained information that Defendants knew to be false, including a misrepresentation of the number of employees that were currently employed by the Defendants at the time of the forgiveness application.

107. The Defendants' Second PPP Application contained information that the Defendants knew to be false, including a misrepresentation of the number of employees that were currently employed by the Defendants at the time of the loan application.

108. The Defendants' application to forgive the Second PPP Loan contained information that the Defendants knew to be false, including a misrepresentation of the number of employees that were currently employed by the Defendants at the time of the forgiveness application.

109. The Defendants' knowingly false misrepresentation on the loan applications were a foreseeable factor in the United States' loss.

110. By knowingly submitting false information in the two PPP Applications and/or the EIDL Application, and/or any applications for forgiveness of those loans, the Defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

111. As a result of the Defendants' actions, the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false and/or fraudulent claim.

## COUNT II

### Making False Statements in Support of a Claim (31 U.S.C. § 3729(a)(1)(B))

112. Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs in this complaint as if fully set forth herein.

113. This is a claim for treble damages and penalties under the FCA.

114. As described in detail above, the Defendants' knowingly made or used, or caused to be made or used, false or fraudulent records or statements that were material to false or fraudulent claims under the FCA.

115. The United States Government, unaware of the Defendants' falsehoods, funded the PPP loans to the Defendants that the Government would not have funded or paid but for Defendants' illegal conduct.

116. By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in an amount to be determined at trial.

117. By reason of the Defendants' acts, the United States is likewise entitled to the maximum penalty permitted for each and every violation alleged herein.

## COUNT III

### Improper Retention of Money Owed to the Government (31 U.S.C. § 3729(a)(1)(G))

118. Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs in this complaint as if fully set forth herein.

119. This is a claim for treble damages and penalties under the FCA.

120. Defendants knowingly concealed overpayments from the United States and failed to remit such overpayments.

121. The United States Government, unaware of Defendants' falsehoods, funded the PPP loans to the Defendants that the Government would not have funded or paid but for Defendants' illegal conduct.

122. By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in an amount to be determined at trial.

123. By reason of the Defendants' acts, the United States is likewise entitled to the maximum penalty permitted for each and every violation alleged herein.

## VII. DEMAND FOR JURY TRIAL

124. Relator demands a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

## VIII. REQUEST FOR ATTORNEY FEES AND COSTS

125. Relator has accrued attorneys' fees and costs in pursuing this complaint and is entitled to recover those fees and costs consistent with 31 U.S.C. § 3730, Federal Rule of Civil Procedure 54, and any other applicable authority.

## IX. PRAYER FOR RELIEF

126. Relator respectfully requests that the Court enter judgment against the Defendants and award the following:

   i. Damages in the amount of three (3) times the actual damages suffered by the United States as a result of Defendants' conduct;

   ii. Civil penalties against Defendants up to the maximum allowed by law for each violation of 31 U.S.C. § 3729;

   iii. The maximum award Relator may recover pursuant to 31 U.S.C. § 3730(d);

iv. All costs and expenses of this litigation, including attorney fees and costs of court; and

v. All other relief this Court deems just and proper.

DATED: August 4, 2023

HOLLAND & HART LLP


By: */s/ Christopher C. McCurdy*
Erik F. Stidham
Christopher C. McCurdy
*Attorneys for Relator Stuart Hallam*

30044148_v4